```
H9EAABAQS                      Sentence
```

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
3  UNITED STATES OF AMERICA,
4           v.                                16 CR 357 (VSB)
5  ALEXI RAMON PILLASAQUA BAQUE,
6               Defendant.
7  ------------------------------x
8                                              New York, N.Y.
                                                September 14, 2017
9                                               10:30 a.m.
10
    Before:
11
                    HON. VERNON S. BRODERICK,
12
                                                District Judge
13
14                          APPEARANCES
15 JOON H. KIM
        Acting United States Attorney for the
16      Southern District of New York
   JONATHAN REBOLD
17      Assistant United States Attorney
18 KEN WOMBLE
        Attorney for Defendant Baque
19
   JOHN KALEY
20      Attorney for Defendant Baque
21 ALSO PRESENT:  DAGOBERTO ARRANTIA, Spanish Language Interpreter
22
23
24
25

1              (Case called)
2              MR. REBOLD:  Jonathan Rebold, for the government.
3              Good morning, judge
4              THE COURT:  Morning.
5              MR. WOMBLE:  For Mr. Baque, Ken Womble, along with
6     John Kaley.
7              THE COURT:  Good morning, your Honor.
8
9              MR. KALEY:  Good morning, your Honor.
10             THE COURT:  Good morning.
11             Mr. Baque, you may be seated
12             MR. KALEY:  Your Honor, Mr. Womble is going to be
13    carrying the laboring oar today.  He was assigned to work with
14    me pursuant at the district's mentoring program.
15             THE COURT:  Fantastic.
16             OK.  So, Mr. Baque, if at any point in time -- can you
17    hear and understand the interpreter?
18             THE DEFENDANT:  Yes.
19             THE COURT:  If at any time you can't because there's a
20    malfunction with the equipment or you don't understand
21    something, just stop me and we'll either fix the equipment or
22    either I or your attorneys will explain whatever your question
23    is more fully to you.  OK?
24             THE DEFENDANT:  Yes.
25             THE COURT:  Let me just review in connection with

1   today's sentencing the materials that I have.  I have the
2   presentence investigation report which was prepared on
3   August 25.  I have the defendant's initial sentencing
4   submission which was filed on August 31.  I have the
5   supplemental submission which was filed yesterday which,
6   obviously, September 13 with various attachments including a
7   photograph of Mr. Baque's home.  I have letters from family
8   members and a memo from Mr. Baque's supervisor in prison in
9   the, I guess it's the MCC for the place that he works, as well
10  as two, I guess they're certificates from captains who had
11  worked with Mr. Baque at a port in his home of Manta, Ecuador.
12          I also have the government's sentencing submission
13  which was filed on September 27th of this year.
14          I believe that all of the submissions have been filed
15  on ECF and have all the parties received them?
16          MR. REBOLD:  Yes, your Honor.
17          MR. WOMBLE:  Yes, we have.
18          THE COURT:  OK.  All right.  Is there anything that
19  I'm missing?  In other words, anything that I haven't mentioned
20  that I should have not.
21          MR. REBOLD:  Not that we're aware of.
22          MR. WOMBLE:  No, your Honor.
23          Just to add, we submitted those papers, supplemental
24  submission yesterday because we had just received those
25  materials yesterday.  We apologize for getting them to the

1     Court so late.
2             THE COURT:  That's OK.  I happen to be looking at the
3     docket last night so I saw it in advance of this morning.  So I
4     had read through the attachments.
5             Mr. Womble, have you read the presentence
6     investigation report and discussed it with your client?
7             MR. WOMBLE:  Yes, I have.
8             THE COURT:  Mr. Baque, have you read the presentence
9     report or had it read to you?
10            THE DEFENDANT:  Yes, sir.
11            THE COURT:  Have you discussed it with your attorneys?
12            THE DEFENDANT:  Yes, your Honor.
13            THE COURT:  Have you had an opportunity to go over any
14    errors with them or anything else that you want to take up with
15    me with regard to the report?
16            THE DEFENDANT:  No, your Honor.
17            THE COURT:  All right.  Mr. Womble, do you have any
18    objections to the presentence report?
19            MR. WOMBLE:  No.
20            THE COURT:  All right.  Mr. Rebold, do you have any
21    objections to the presentence report?
22            MR. REBOLD:  No, your Honor.
23            THE COURT:  All right.  So I'll adopt the factual
24    findings in the report and the presentence report will be made
25    a part of the record in this matter and it will be placed under

1    seal.  However, if an appeal is taken, counsel on the appeal

2    can have access to the sealed report without further

3    application to me or to one of my colleagues.

4              Mr. Baque, the law requires that part of the

5    determination of your sentence that I reference a certain set

6    of rules which are called the "sentencing guidelines".  I

7    mentioned those during your guilty plea.  They're essentially

8    rules that are put out by a commission that are meant to help

9    judges like myself when we're imposing sentence on individuals

10   convicted of a crime.

11             Now at some point the guidance guidelines had been

12   mandatory and I would have had to apply them in every case with

13   very limited opportunity not to.  They're no longer mandatory.

14   However, they are a starting place for me.  In other words, I

15   have to consider the guidelines first before I consider the

16   other factors that are contained in Title 18 U.S.C. Section

17   3553(A).

18             Now, Mr. Baque, you pled guilty to one count of a

19   superseding information which charges you with conspiring to

20   distribute and possess with intent to distribute cocaine while

21   onboard a vessel subject to the jurisdiction of the United

22   States.  In determining your guidelines I applied the

23   November 1, 2016 guideline manual.  The statute in question, in

24   other words, statutes to which you've pled guilty, do not have

25   a specific guideline that apply to them.  So pursuant to 2X5.1

1   if the offense is a felony of which no guidelines exist, then

2   the most analogous offense guideline can be applied.  In this

3   case that's Section 2B1.1 of the sentencing guidelines.

4           Now since you're being held responsible for

5   approximately 901 kilograms of cocaine, the base offense level

6   is 38.  The offense level is then reduced by four levels

7   pursuant to 2D1.1A53 because of your mitigating role in the

8   offense, and as a result, the base offense level is 34.

9   Because you had a minor role here, two levels are taken from

10  that and an additional three levels are removed from the

11  calculation making the total offense level of 29 and the three

12  levels are for your acceptance of responsibility.

13          You have no criminal history points.  The maximum fine

14  here is 30,000 to $1 million.  The resulting guideline range is

15  87 to 108 months.

16          Do the parties agree that that is the resulting

17  guideline range?

18          MR. REBOLD:  Yes.

19          MR. WOMBLE:  Yes.

20          THE COURT:  OK.  Mr. Baque, with regard to departures

21  under the sentencing guidelines, I have considered whether or

22  not a departure would be warranted here.  And although I the

23  power and authority to depart, I don't find that there are

24  grounds warranting departure.  However, I still have the

25  ability to grant a variance.  In other words, to vary from the

guideline range and give you a lesser sentence or an increase in sentence but a lesser sentence is what probation recommends and what your attorneys have requested.

Now, let me hear from the parties with regard to sentencing. Does the government wish to be heard?

MR. REBOLD: Just briefly, your Honor. I know I spoke at the sentencing for co-defendant Lopez and I think our sentiments remain the same. But just for the benefit of Mr. Lopez's counsel, the government acknowledges -- excuse me -- for Mr. Baque's counsel.

The government acknowledges that Mr. Baque's role is less significant than almost any other person who is part of this drug tracking organization. We also don't dispute and we are entirely sympathetic to the fact that Mr. Baque committed this crime out of financial disoperation and that he did so because he grew up in an area where the economy wasn't great to begin with and it was ravaged by the an earthquake which affect their ability to provide for their families and really survive in an adequate way through their normal legal form of commerce.

That said, we also think it bears focus that over 900 kilograms of cocaine were trafficked on a vessel that Mr. Baque knowingly boarded and that he made a decision to partake in a much larger criminal enterprise and knew what he was getting himself into and entirely foreseeable that that cocaine or at least a portion of it would work its way across our boarders.

So, in light of the circumstances that led Mr. Baque to commit this offense, the government agreed the following was appropriate to offer a charge much less serious than the (b)(1)(a) offense which would carry a ten-year mandatory minimum.  And we further agreed that it was appropriate to provide him with a minor role adjustment.  And beyond that we even agree that it's appropriate that the defendant receive a sentence below the guidelines level.

It's difficult for the government to assess an appropriate number in any case which is why we often either say "guidelines" or "above guidelines" or "below guidelines" without ever assigning a number.  And I think given the nuances and complexities of these types of cases and the understandable motivations which caused people like Mr. Baque to commit these offenses, we think that it is appropriate, of course, for the Court to go below the guidelines.

We take some degree of exception that the appropriate number is time-served.  We have concerns that if defendants continue to get time-served it will create an incentive, if not for Mr. Baque to go and try to do this but for other people in his shoes to sort of give in to the presently somewhat irresistible temptation to engage in the conduct that's causing so much cocaine to cross into the United States borders.  And so I don't know what the right number is which is why we have recommended without assigning a number that a below guidelines

1     sentence is appropriate.  I think that's really for the Court

2     to decide.  We think it's somewhere in excess of time-served.

3     We certainly think it's below the guidelines range though.

4              And with that, we sort of defer to the Court's

5     discretion.

6              THE COURT:  OK.  Let me ask, I know that we have had

7     discussions in the past with regard to co-defendants, but do

8     you have any more color with regard to how much time Mr. Baque

9     after his sentence, how much time Mr. Baque might spend in

10    Immigration custody before he is deported back to Ecuador?

11             MR. REBOLD:  I don't know the answer to that question,

12    your Honor.  I know that just prior to today's proceedings both

13    defense counsel and I discussed the possibility of the

14    government helping to sort of grease the wheels of deportation

15    by filing removal papers and I don't think the government has

16    any problem with that.  We're just not prepared to do it today.

17             THE COURT:  Sure.

18             MR. REBOLD:  But with or without the government's

19    assistance, I really don't have an estimate as to how long

20    Mr. Baque is likely to remain in the custody of the United

21    States before he is deported.

22             THE COURT: OK.  All right.  Thank you.

23             Mr. Womble, do you wish to be heard

24             MR. WOMBLE:  Thank you, your Honor.

25             I actually want to piggyback on the sentiments of the

1  government to a large degree.  We do argue that time-served in
2  this case is sufficient but not greater than necessary.  I
3  think from the Court's sentence for the co-defendant Lopez
4  which is in line with a number of other sentences that have
5  been handed down recently generally in the range of two years
6  to 18 months, that's the equivalent essentially of time-served
7  for Mr. Baque.
8        I don't want to belabor the points that were made in
9  our submission but to say we were presented yesterday with a
10 photograph that we submitted yesterday to the Court.  We were
11 presented with this photograph showing Mr. Baque's home.  And I
12 think Mr. Kaley and I, we're often in a position where we deal
13 with poverty here in our country.  I think what we see with
14 Mr. Baque is a level of poverty that is drastically different
15 than what we're used to.  There used to be a chicken coop and
16 the bathroom, the outhouse for the home used to be in the back
17 yard and that has been swallowed up by the river.
18       He is a man and I think from the letters that you see,
19 this is a man that desperately wants to get back to his family.
20 His family desperately wants him back.  He is, I think as well
21 from the records from both the sea captain and ship captains,
22 from Manta, as well as the letter from Bureau of Prisons, this
23 is a man with a very strong work ethic.  He admittedly did
24 something very wrong here and he has been punished for that.
25 He understands that the decision that he made that led him to

1    sitting here today has caused a great deal more damage to his
2    family than he ever wanted and will ever want again.  He is a
3    simple man who wants to return to his simple life and he wants
4    to continue fishing so he can continue to support his family.
5             So, your Honor, again, I think a sentence of
6    time-served is, it also makes sure that there's no disparity
7    between Mr. Baque and his co-defendant.  We are in not going to
8    suggest that Mr. Lopez is the captain of the ship.  Although, I
9    know these were three men who were, I think as the government
10   said, were put in a position where they were made an offer that
11   was very, very difficult to refuse.  They all went on that
12   boat.  They know what they did.  Mr. Baque took responsibility
13   for that.  He stands before the Court and we respectfully ask
14   the Court for a sentence in line with his co-defendant and in
15   line with a number of the other sentences that have been handed
16   down in this district recently.  And we ask for time-served as
17   a sentence sufficient but not greater than necessary in this
18   case.
19             THE COURT:  OK.
20             MR. WOMBLE:  Thank you.
21             THE COURT:  All right.  Thank you.
22             Mr. Baque, would you like to make a statement on your
23   own behalf?
24             THE DEFENDANT:  Yes, your Honor.
25             Your Honor, I apologize from the bottom of my heart.

1    I did harm to my family in order to help them and I apologize,
2    your Honor.
3             THE COURT:  All right.  Thank you, Mr. Baque.
4             Is there any reason either counsel is aware of that
5    sentence should not be imposed at this time?
6             MR. REBOLD:  No, your Honor.
7             MR. WOMBLE:  No, your Honor.
8             THE COURT:  All right.  As I stated, Mr. Baque's
9    guideline range is 87 to 108 months.  Under the Supreme Court's
10   decision in Booker and its progeny, the guideline range is only
11   one factor that I must consider in deciding the appropriate
12   sentence.  I'm also required to consider the other factors set
13   forth in 18 U.S.C. Section 3553(a) and I have done so.
14            Those factors include but are not limited to the
15   nature and circumstances of the offense and the personal
16   history and characteristics of the defendant as each defendant
17   must be considered individually as a person.
18            I'm also required to consider the seriousness of the
19   offense, promote respect for the law, provide just punishment
20   for the offense and afford adequate deterrence to criminal
21   conduct and avoid unwarranted sentencing disparities, among
22   other things.
23            Now I note the probation department has recommended a
24   sentence of time-served which obviously is a variance from the
25   guidelines.  The government recommends a significant sentence

but one that is below the guideline range but is more than time served. And the defendant has requested a sentence of time-served.

Now, first I want to discuss the circumstances of the offense.

Mr. Baque, as your attorney acknowledged, this is a very serious offense. You participated in a conspiracy to distribute and possess with intent to distribute 901 kilograms or over 1900 pounds of cocaine. Now, I think it's fairly clear that when you boarded that ship you weren't aware exactly how much cocaine there was going to be. But based upon the size of the vessel and the number of individuals who were part of the crew, it was going to be a substantial amount of cocaine. You also had an idea that you were being paid more than you would typically earn in a year, as were the other individuals. So it was a significant amount of cocaine. Obviously narcotics trafficking has a disastrous effect on society. It destroys people's lives, families and neighborhood.

Now there's no evidence of violence here but oftentimes narcotics trafficking and violence go hand in hand. But again, if there's evidence of any violence here and there is no question that the government I think is correct in its assessment in its letter that you and your co-defendants did play a vital role, albeit, a minor role, a vital role in the narcs trafficking because without individuals who are willing

1  to transport the drugs, the drugs would be much more obsolete.
2  It would be difficult if not impossible to get them into this
3  country and into other countries.
4         However, I note from the presentence report and
5  submissions as I mentioned, your minor role.  You were
6  recruited in large part by exploiting the economic conditions
7  of your country and, specifically, of your village itself.
8  After the earthquake my understanding is from the submission I
9  received in this case, as well as others, that your livelihood
10 which is fishing became extremely difficult and in dangerous
11 because of the aftershocks of the dangerous tsunami.  So many
12 captains did not decide to venture out at that time, and
13 therefore, leaving a significant gap in the work that was
14 available.
15        So when you were approached with this offer I have no
16 doubt that it was and I think your lawyer, that you viewed it
17 as something that was hard to resist and, obviously, you didn't
18 resist that.  So I will take that into consideration in
19 deciding what is an appropriate sentence here.
20        But now let me discuss a little bit more in detail
21 your personal history and characteristics.  All appear to be
22 agree that you were raised and live in an impoverished
23 environment.  You grew up in a three bedroom house with no
24 electricity and no running water with your parents and three
25 sisters, your grandparents and three uncles.  It's not disputed

1   that your family at times did not have enough money for
2   clothing and at times food.  At 16 you dropped out of school
3   and began working so that your older sister could complete her
4   education.  There's no dispute that you do provide support for
5   yourself and your family by fishing.  And that at times you
6   provide your sisters with a little extra money to help them
7   support their household.
8            You also appear to be a hardworking individual both
9   from the submissions I received recounting the work that you
10  did in your home country but also from the letter from the food
11  service department where your supervisor states that despite
12  the language barrier, he is hardworking.  He has been a
13  hardworking and diligent person during the tenure with us.  He
14  has worked on various sections of the kitchen, including the
15  warehouse.  He has shown his sharp skills as a worker and
16  individual and he is a very enthusiastic and respectful that
17  gets along with other inmates and staff.  He always gives one
18  hundred percent to his work and available at all times when
19  requested.
20           So I'm going to take that into consideration also that
21  despite your circumstances, being out of your country in
22  another country that you never expected to be in and despite
23  the fact that you're incarcerated that you decided to not only
24  work but to diligently work at the job that you had while
25  incarcerated.

1          I've also read letters of your family members.  Now
2    the letters don't appear to be directly related to sentencing.
3    They appear to be, some of them, letters addressed to you.  So
4    as I understand the letters, you turned 27 while you were in
5    prison.  Those letters expressed a level of love for you and
6    expressed the fact that your family members miss you both in
7    terms of economically but also in terms of emotionally.
8          I've also read the certificates by the two captains
9    for whom you worked when you were in your country.  And they
10   attest to your good character as a worker.  Specifically, they
11   state that you are an upright, honest, respectful and stable
12   person, that you are responsible and that you've demonstrated
13   over the years from the work that you've done with them those
14   qualities.  I'm going to take those letters into consideration
15   also.
16         Also, although we're not able to give a specific
17   number, there is no doubt that you will have to spend some
18   additional time in custody.  And I'll say if there's anything
19   I'm not sure or aware of anything that I can do but as your
20   lawyers and the government work through whatever issues they
21   are going to work through to try and expedite your deportation
22   from this country, if there is anything I can do to facilitate
23   that, I will endeavor to do that.
24         Now, Mr. Baque, will you please rise for the
25   imposition of sentence.

1    It is the judgment of this Court that you be committed
2 to the custody of the Bureau of Prisons for a period of
3 time-served.  It appears to me based upon your specific
4 circumstances that this sentence is sufficient for both
5 specific and general deterrence.  Your incarceration will be
6 followed by three years of supervised release.
7    You may be seated.
8    I believe that this sentence is sufficient but not
9 greater than necessary to comply with the purposes of
10 sentencing under 18 U.S.C. Section 3553(A).
11    There will be no fine because the probation department
12 has recommended no fine because of your financial situation.
13 However, you must pay a mandatory $100 special assessment.
14    I note that in the plea agreement it did indicate that
15 you've admitted to forfeiture allegations in the information.
16 However, let me ask, will the government be pursuing forfeiture
17 here?
18    MR. REBOLD:  No, your Honor.
19    THE COURT:  All right.  So there will be no
20 forfeiture, Mr. Baque.
21    Now, with regard to your supervised release and I
22 understand that in all likelihood you are going to be deported
23 but as a part of the supervised release term, it is a
24 mandatory.  And to the extent you're not deported, the standard
25 conditions will apply, as well as the special conditions on

1  page 17 of your presentence report, in addition to the
2  mandatory conditions on pages 15 and 16 of your PSR will also
3  be imposed.
4           Does either counsel know of any legal reason why this
5  sentence should not be imposed as stated?
6           MR. REBOLD:  No, your Honor.
7           MR. WOMBLE:  No, your Honor.
8           THE COURT:  Mr. Baque, you do have a right to appeal
9  your conviction and sentence.  The notice of appeal must be
10 filed within 14 days of the judgment of conviction.  If you are
11 not able to pay the cost of an appeal, you may apply for leave
12 in forma pauperis.  If you request, the clerk of court will
13 file a notice of appeal on your behalf.
14          Mr. Baque, obviously, you're getting a substantial
15 break from the guideline range here.  However, it's my view
16 that based upon your circumstances that that's the appropriate
17 sentence but let me just emphasize something for you.
18          If you decide to participate in this type of activity
19 and come back into this country you are not going to get
20 another break.  So the next time you come back in all
21 likelihood you will be facing at least ten years if not more
22 than that.  I'm making these comments so that if you don't
23 appear before me, if you appear before somebody else that that
24 judge will be aware of what I've said here today.
25          The government pointed out in its letter that in other

1    jurisdictions and other parts of the country where individuals
2    who have transported drugs like you have either by boat or
3    otherwise have been sentenced to much longer sentences,
4    sentences that are measured in terms of years and not months,
5    some ten years, some longer.  So you should understand that you
6    are, obviously, getting a break today.
7              Again, I feel that based upon your circumstances it is
8    an appropriate sentence but what I would like you to do when
9    you get back to your home country is to make sure that other
10   young men and other men in your community are aware of this.  I
11   know it's a temptation that's difficult to resist because of
12   the amount of money that you're being offered.  But you can
13   give personal accounts to what the impact has been on you, your
14   family and your life, and you can also indicate to folks that
15   you got a break but others have not.  I hope that you take that
16   to heart when you return to your country, and I wish you luck.
17             Is there anything else?  Are there some open counts
18   here?
19             MR. REBOLD:  Yes, your Honor.  At this time the
20   government moves to dismiss the open counts in the underlying
21   indictment.
22             THE COURT:  OK.  Those counts will be dismissed.  Is
23   there anything else?
24             MR. WOMBLE:  No.  Thank you, your Honor.
25             THE COURT:  Thank you.

1           Mr. Baque, good luck.  We'll stand adjourned.
2           THE DEFENDANT:  Thank you very much, your Honor.
3                          (Adjourned)